Patricia Lee Refo (#017032)
Sara M. Vrotsos (#022743)
SNELL & WILMER L.L.P.
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202
Telephone (602) 382-6000
svrotsos@swlaw.com

Madeleine M. McDonough, *pro hac vice*
Steven M. Thomas, *pro hac vice*
Todd A. Gangel, *pro hac vice*
SHOOK, HARDY & BACON, L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone (816) 474-6550
tgangel@shb.com

Attorneys For Defendant SmithKline Beecham
Corporation d/b/a GlaxoSmithKline

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mayda Nix as the surviving mother of Christopher Nix, Deceased, on behalf of herself and MillenniumChristopher Richard Steven-Nix, through his Guardian Ronnie Mungle, as the surviving child of Christopher Nix, Deceased,<br><br>                    Plaintiffs,<br><br>vs.<br><br>GlaxoSmithKline plc, SmithKline Beecham Corporation d/b/a GlaxoSmithKline; and John Doe Defendants A–Z, being those persons, sales representatives, division sales managers, firms or corporations whose fraud, scheme to defraud, negligence and/or other wrongful conduct caused or contributed to the Plaintiff Decedent's injuries and subsequent death, and whose true names and identities are presently unknown to the Plaintiffs but will be substituted by amendment when ascertained,<br><br>                    Defendants. | No. 2:06-CV-00043-PHX-EHC<br><br>**DEFENDANT SMITHKLINE BEECHAM CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION** |

## I.   INTRODUCTION

Plaintiffs have filed a "Motion for Reconsideration" of this Court's summary-judgment ruling in favor of SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"). But Plaintiffs do not ask the Court to "reconsider" anything. Instead, they ask the Court to consider for the first time a collection of new arguments that are nowhere to be found in Plaintiffs' 53-page brief in opposition to GSK's summary-judgment motion.

Plaintiffs cast aspersions on Dr. John Hoehne, a board-certified asthma specialist and the physician who prescribed Serevent® for Christopher Nix, essentially arguing that he should not be deemed a learned intermediary because he:

- Only saw Nix one time;

- May not have obtained Nix's informed consent before prescribing him Serevent®;

- Allegedly harbors a potential bias in favor of GSK; and/or

- Is somehow "equivocal" as to whether different or additional warnings would have changed his decision to prescribe Serevent® for Nix.

Not only do these arguments lack a factual or legal basis, they are untimely and improper. A motion for reconsideration cannot be used to raise arguments that could have been raised prior to entry of judgment. *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *Demasse v. ITT Corp.*, 915 F. Supp. 1040, 1048 (D. Ariz. 1995).

The Court should not consider Plaintiffs' new arguments, but if it does, it should reject them.

///
///
///
///
///

- 1 -

## II. ARGUMENT AND AUTHORITIES

Absent "highly unusual circumstances," a motion for reconsideration of a summary-judgment order should be denied unless:

- New evidence has been discovered;
- There has been an intervening change in the controlling law; or
- The Court committed "clear error."

*389 Orange Street Partners*, 179 F.3d at 665. Because Plaintiffs' motion does not discuss any previously unavailable evidence or newly minted legal authority, Plaintiffs are not entitled to reconsideration of summary judgment unless they demonstrate "clear error." As shown below, the Court's ruling was entirely proper, Plaintiffs' new arguments do not reveal a single error, and Plaintiffs' motion should be denied.

### A. DR. HOEHNE IS THE PRESCRIBING PHYSICIAN AND, THUS, THE LEARNED INTERMEDIARY.

Plaintiffs' first new argument is that the learned-intermediary doctrine should not apply because Dr. Hoehne did not have a "personal" or "close" relationship with Nix. Tellingly, Plaintiffs do not cite a single case—from any jurisdiction—in support of such a position.

California law is clear: the learned intermediary is the physician who actually prescribes the medication at issue. Under the learned-intermediary doctrine, "a manufacturer's duty to warn runs to the *prescribing physician*." *Morris v. Parke, Davis & Co.*, 667 F. Supp. 1332, 1348 n.11 (C.D. Cal. 1987) (citing *Stevens v. Parke, Davis & Co.*, 507 P.2d 653, 661 (Cal. 1973)) (emphasis added). The learned-intermediary doctrine is not reserved for situations in which the prescribing physician has a long-standing, close, or personal relationship with the patient. It applies to the physician who prescribes the drug.

Plaintiffs urge the Court to incorporate potentially limitless additional inquiries into its analysis, such as:

- Does the prescribing physician recognize a picture of the patient years after he saw him?

- Does he have "independent recollection" of the patient without referring to records?

- Does he remember details about the patient's personal life?

But these extra qualifications that Plaintiffs suggest have nothing to do with the two central questions in a learned-intermediary case:

- Were the warnings provided to the *prescribing physician* adequate?

- Would different or additional warnings have actually changed the *prescribing physician's* decision to prescribe the drug?

*Motus v. Pfizer*, 196 F. Supp. 2d 984, 990–91, 997 (C.D. Cal. 2001), *aff'd*, 358 F.3d 659, 660–61 (9th Cir. 2004).

Thus, Plaintiffs' argument that Nix's primary-care physician, Dr. Julie Tominaga, should be inserted as a "substitute" learned intermediary directly contradicts California law. Plaintiffs list several reasons that they believe make Dr. Tominaga well-suited for the learned-intermediary role, but she lacks the only qualification that would be relevant: actually having prescribed Serevent® for Nix. It is undisputed that she did not, and that Dr. Hoehne—the asthma specialist—is the only physician who did.[1]

Dr. Hoehne is the learned intermediary in this case, and the Court correctly entered summary judgment because Plaintiffs lack any "*affirmative evidence*" that "an

---

[1] Even if Dr. Tominaga were accepted as "substitute" learned intermediary, there is no evidence that Dr. Tominaga believed the Serevent® labeling was inadequate when it was prescribed for Nix or that she would have discontinued Nix's Serevent® had she been provided with different or additional warnings. Thus, even assuming *arguendo* that Plaintiffs' novel legal theory about the learned-intermediary doctrine is correct (which it is not), Plaintiffs' argument that Dr. Tominaga "may well have removed Nix from Serevent if she were apprised of risks" (*see* Memorandum in Support of Plaintiffs' Motion for Reconsideration ("Memorandum") at 14) still lacks a factual basis in the requisite "affirmative evidence." *See Motus*, 196 F. Supp. 2d at 991.

- 3 -

1    adequate warning to the prescribing physician *would have* altered the physician's
2    conduct." (Order of September 5, 2007 ("Order") at 5–6 (quoting *Motus*, 196 F. Supp.
3    2d at 991 (emphases added).) As shown below, Plaintiffs' belated attempts to impugn
4    Dr. Hoehne's testimony—and character—all fail based on the undisputed facts and
5    applicable law, and the Court should deny Plaintiffs' motion.

  **B. DR. HOEHNE IS THE LEARNED INTERMEDIARY WHETHER OR NOT HE OBTAINED NIX'S INFORMED CONSENT.**

  In their next new argument, Plaintiffs invoke informed consent—a doctrine frequently at issue in medical-malpractice cases. *See generally, e.g.*, *Akkerman v. Mecta Corp.*, 62 Cal. Rptr. 3d 39 (Ct. App. 2007). Plaintiffs speculate that Dr. Hoehne "may well have failed" to obtain Nix's informed consent, and that this should somehow disqualify Dr. Hoehne as learned intermediary. (Memorandum at 7.) No California authority supports Plaintiffs' position. Plaintiffs cite *Environmental Law Foundation v. Wykle Research, Inc.*, 35 Cal. Rptr. 3d 788 (Ct. App. 2005), for the proposition that "California recognizes the conceptual relationship between the doctrine of informed consent and the learned intermediary doctrine." (Memorandum at 6.) But the only language in that case purporting to link the two doctrines is a *passage from the losing appellant's brief* quoted by the court. *See id.* at 795 n.8, 797.

  What Plaintiffs have found, then, is not a case supporting their alleged link between the learned-intermediary and informed-consent doctrines, but merely another unsuccessful litigant making the same argument. California law simply does not support Plaintiffs' position that Dr. Hoehne is not a learned intermediary because he may not have obtained informed consent. This does not constitute good cause for reconsidering the summary-judgment ruling.

  **C. PLAINTIFFS' CLAIM THAT DR. HOEHNE MAY BE BIASED IN FAVOR OF GSK IS SPECULATIVE, UNDEVELOPED, AND UNTIMELY.**

  Plaintiffs' next new argument is that Dr. Hoehne may be biased in favor of GSK and thus is not credible as a learned intermediary. Plaintiffs point to Dr. Hoehne's ownership of GSK stock as evidence that his credibility should be called into question.

- 4 -

The following exchange occurred during Plaintiffs' counsel's questioning of Dr. Hoehne at his deposition:

> Q. Have you ever accepted money, other than today, from GlaxoSmithKline?
>
> A. Accepted money? No. I have some stock. That is it.

(Deposition of Dr. John Hoehne ("Hoehne Dep."), Doc. No. 114, Ex. I, at 114:12–15.)

This is the single mention of GSK stock in Dr. Hoehne's 115-page deposition transcript. Plaintiffs never asked Dr. Hoehne how much stock he owned, when or for how long he has held the stock, whether he owned stock in competing companies offering other asthma medications, or any other follow-up questions regarding this information that he affirmatively volunteered. Based on Dr. Hoehne's testimony that he owned an unspecified amount of GSK stock for an unspecified period of time, Plaintiffs hyperbolically allege that Dr. Hoehne has a "serious conflict of interest" in a lawsuit involving GSK.[2]

But once again, Plaintiffs' speculative conclusion lacks a basis in the requisite "*affirmative evidence*" of facts that "*would have* altered the physician's conduct." (*See* Order at 5–6 (citing *Motus*, 196 F. Supp. 2d at 991 (emphases added).) Dr. Hoehne testified as to the factors he considers when making prescribing decisions for his patients. He weighs the potential risks and benefits of the drug and takes into account the patient's individualized medical condition—including the patient's medical history, family medical history, concomitant drug use, and severity of the underlying condition. (Hoehne Dep., Doc. No. 114, Ex. I, at 21:23–22:9.) There is no evidence that Dr.

---

[2] Interestingly, Plaintiffs also use Dr. Hoehne's stock ownership as the sole factual support for their informed-consent argument. They assume that Dr. Hoehne could not have obtained Nix's informed consent because he failed to disclose his financial interest in GSK before prescribing Serevent® for Nix. Assuming *arguendo* that an informed-consent analysis is relevant in a learned-intermediary case under California law (which it is not), Plaintiffs' argument still fails on the undisputed facts. Nearly nine years after he prescribed Serevent® for Nix in 1998, Dr. Hoehne's testified, "I *have* some [GSK] stock." (Hoehne Dep., Doc. No. 114, Ex. I, at 114:14 (emphasis added).) But this is merely evidence of extant stock ownership. Plaintiffs have no evidence that Dr. Hoehne owned a single share of GSK stock at the time he made the prescribing decision that is the subject of their new informed-consent argument.

1 Hoehne takes his personal finances or investment portfolio into account when deciding 2 which medications to prescribe for his patients. Nor did Plaintiffs even ask such 3 questions or raise such issues in response to GSK's summary-judgment motion.

4 In fact, Dr. Hoehne's undisputed testimony contradicts any argument by Plaintiff 5 that he has—or has ever had—a financially motivated bias in favor of GSK. When 6 asked about asthma medications he prescribes for his patients, Dr. Hoehne testified that 7 he most often prescribes a drug called Qvar—more frequently than he prescribes 8 Serevent® or other GSK asthma medicines. (Hoehne Dep., Doc. No. 114, Ex. I, at 9 75:21–76:9.) GSK does not manufacture Qvar, and there is no evidence that Dr. 10 Hoehne owns stock in the company that does manufacture it. Thus, the undisputed facts 11 do not point in the direction of bias; they point *away* from it.

12 Plaintiffs also take issue with Dr. Hoehne's contact with GSK sales 13 representatives—including his acceptance of Serevent® samples from the 14 representatives. Again, Plaintiffs' bias argument is bereft of factual support. Dr. 15 Hoehne testified in his deposition that:

- He can't recall a single Serevent®-related representation made to him by a GSK sales representative;

- He doesn't remember the names of any GSK sales representatives who have ever visited his offices; and

- Samples left by sales representatives do not influence his prescribing decisions.

21 (Hoehne Dep., Doc. No. 114, Ex. I, at 48:15–49:1; 64:4–7.) Plaintiffs' claim of 22 "relationships" that were "forged" between Dr. Hoehne and GSK (*see* Memorandum at 23 9) is unsupported by the record. There is no evidence that Dr. Hoehne had any more 24 contact with GSK sales representatives than with sales representatives from other 25 prescription-drug manufacturers, or that he eschewed samples of other companies' 26 medicines while accepting them from GSK.

27 Try as they might to convince this Court that Dr. Hoehne fails to "put the 28 patient's well being above all other considerations" (*see* Memorandum at 4), Plaintiffs

- 6 -

1 simply cannot produce affirmative evidence that Dr. Hoehne based his decision to
2 prescribe Serevent® for Nix on anything but a properly informed risk-benefit analysis.
3 The allegations of bias fall flat, and summary judgment should not be reconsidered on
4 this basis.

### D. DR. HOEHNE WAS UNEQUIVOCAL ABOUT HIS DECISION TO PRESCRIBE SEREVENT® FOR NIX.

As the Court noted, "Plaintiffs must show that additional warnings would have caused Dr. Hoehne not to prescribe Serevent for Mr. Nix." (Order at 6.) This is the "dispositive question" under *Motus*. 196 F. Supp. 2d at 997. Plaintiffs misread *Motus* and attempt to distinguish it on grounds that Dr. Hoehne "says he would have done something different." (Memorandum at 10.) Although the *Motus* court stated that the plaintiff produced no evidence the prescribing physician "would have acted differently," *see id.* at 999, the only relevant conduct under *Motus* and California law is the prescribing physician's decision to *prescribe* the drug at issue.

In *Motus*, the plaintiff's counsel asked the prescribing physician:

> *If you had been told* that Zoloft can cause an increased risk in suicide during the first few weeks of drug treatment, *is that the kind of information you would pass on to your patients?*

*Id.* at 997 (emphases added). Because the prescriber answered "Yes," the plaintiff argued that his response created a genuine issue of material fact as to whether the prescriber "would have *changed his behavior* had Pfizer provided adequate warnings." *Id.* (emphasis added).

But the *Motus* court disagreed, reasoning:

> [T]he appropriate question would have been: "*If Zoloft's package insert had contained a warning* that Zoloft can cause an increased risk in suicide during the first few weeks of drug treatment, *would you have prescribed Zoloft to Mr. Motus?*"

*Id.* (emphases added). Because the plaintiff's lawyer did not ask that question, the *Motus* court held there was no evidence that a different or additional warning would have prevented the prescribing physician from prescribing Zoloft for the decedent. *Id.*

- 7 -

Here, as in *Motus*, Plaintiffs' counsel did not elicit an answer from Dr. Hoehne to the dispositive question. Instead, Plaintiffs argue that Dr. Hoehne "says he would have done something different" based on two pages of his deposition, where he answered Plaintiffs' counsels' questions as follows, in pertinent part:

> Q. Did you report in your medical records any risk that you advised Christopher Nix of when you prescribed him Serevent in July of 1998?
>
> A. No.
>
> Q. *If you had known* serious risks at that time *you would have advised him of that, correct*?
>
> A. *Yes.*
>
> . . . .
>
> Q. *If you had been concerned* that Christopher Nix was suffering to an extent that where he could die at a young age, *is that something that you would have mentioned to him when he saw you in July of 1998[?]*
>
> A. *I will mention that to patients at times* if I think that they are not very compliant and tell them that thousands of people a year will die of asthma. But I don't—I have no idea whether I mentioned that to him or not.

(Hoehne Dep., Doc. No. 114, Ex. I, at 99:6–13, 100:5–14 (emphases added).)

This is exactly the type of testimony that the *Motus* court held insufficient to establish that *different or additional warnings in the package insert* would have changed the prescribing physician's *decision to prescribe a drug* for his patient. 196 F. Supp. 2d at 997. Dr. Hoehne, like the prescribing physician in *Motus*, merely testified that if he *had learned of certain information* from unspecified sources, it would have been the kind of information he would have *passed on to his patients*.

Regarding his Serevent®-related prescribing decisions, however, Dr. Hoehne testified unequivocally that he continues to prescribe Serevent® in conjunction with an inhaled corticosteroid for patients, like Nix, whose asthma is not adequately controlled with an inhaled corticosteroid alone. (Hoehne Dep., Doc. No. 114, Ex. I, at 58:3–59:4; 60:1–8.) Thus, as this Court noted, "[t]he evidence in support of causation is no

stronger in this case than it was in *Motus*." (Order at 5.) The Court should not reconsider its summary-judgment ruling on the basis of Plaintiffs' new and unavailing attempts to distinguish *Motus*.

### E. THE COURT PROPERLY APPLIED THE APPLICABLE LAW AND SHOULD NOT RECONSIDER ITS SUMMARY-JUDGMENT RULING BASED ON THE FOREIGN AUTHORITIES CITED BY PLAINTIFFS.

In their final new argument, Plaintiffs misapprehend the Court's citation to *Grenier v. Medical Engineering Corp.*, 99 F. Supp. 2d 759 (W.D. La. 2000). Plaintiffs apparently believe that this Court's discretionary citation to the opinion of a sister district court in the Fifth Circuit invites Plaintiffs to rely on any state or federal court within the bounds of the Fifth Circuit—regardless of whether that law bears any resemblance to California's. Plaintiffs thus cite a Mississippi Supreme Court case and a Fifth Circuit case interpreting Mississippi law to argue that they should be able to introduce "objective evidence" of how a "reasonable physician" would have responded to different or additional warnings. (Memorandum at 13.)

That is not the law in California. As the Court has already stated, under California law, "Plaintiffs must show that additional warnings would have caused Dr. Hoehne not to prescribe Serevent for Mr. Nix." (Order at 6.) The *Grenier* case interpreted Louisiana's learned-intermediary doctrine, which operates very similarly to California's. *See* 99 F. Supp. 2d at 765 ("To establish cause in fact and proximate cause, a plaintiff must show that a proper warning would have changed the decision of the treating physician [here, a surgeon who inserted silicone breast implants]—but for the inadequate warning, the treating physician would not have used the product."). And, contrary to Plaintiffs' assertion, *Grenier* did not adopt the "objective evidence" standard applied by the courts interpreting Mississippi law.

*Grenier* is simply another court's endorsement of the same basic rule of law that applies in California: under the learned-intermediary doctrine, "a manufacturer's duty to warn runs to the *prescribing physician*." *Morris*, 667 F. Supp. at 1348 n.11 (emphasis added). Thus, "objective evidence" relating to the prescribing practices of any

physician other than Dr. Hoehne is irrelevant to this case and will not change the result that California law demands. Absent "affirmative evidence" that different or additional warnings would have changed Dr. Hoehne's decision to prescribe Serevent® for Nix, GSK remains entitled to summary judgment under the learned-intermediary doctrine.

## III.   CONCLUSION

Plaintiffs' motion makes no mention of new evidence or new legal authority, and fails to demonstrate that this Court committed "clear error" in entering summary judgment for GSK. *See 389 Orange Street*, 179 F.3d at 665. If anything, Plaintiffs' arguments are a reaffirmation that the Court got it right the first time.

Accordingly, for the reasons set forth above, GSK respectfully requests that this Court deny Plaintiffs' Motion for Reconsideration and allow the summary-judgment Order of September 5, 2007 to stand.

DATED this 10th day of October, 2007.

SNELL & WILMER, L.L.P.

By: s/ Sara M. Vrotsos
Patricia Lee Refo
Sara M. Vrotsos
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-2202

-and -

SHOOK, HARDY & BACON, L.L.P
Madeleine M. McDonough, *pro hac vice*
Steven M. Thomas, *pro hac vice*
Todd A. Gangel, *pro hac vice*
2555 Grand Boulevard
Kansas City, Missouri 64108-2613

*Attorneys for Defendant SmithKline Beecham Corporation d/b/a GlaxoSmithKline*

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 10, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jeffrey S. Thompson
Lynn Seithel Jekel
MOTLEY RICE LLC
28 Bridgeside Boulevard
Post Office Box 1792
Mount Pleasant, South Carolina 29464

James R. Harrison
Richard L. Green
Paul D. Friedman
O'STEEN & HARRISON
300 West Clarendon Avenue, Suite 400
Phoenix, Arizona 85013

                                   s/ Sara M. Vrotsos

2058519.1